# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

JOE B. ALLMAN,

      **Plaintiff,**

  v.                              Case No. 2:18-cv-369
                                      JUDGE GEORGE C. SMITH
                                      Magistrate Judge Deavers

WALMART INC.,

      **Defendant.**

## OPINION AND ORDER

This matter is before the Court upon Defendant Walmart Inc.'s Partial Motion to Dismiss Plaintiff's Amended Complaint ("Walmart's Motion") (Doc. 13). The motion is fully briefed and ripe for disposition.[1] For the following reasons, Walmart's Motion is **GRANTED**.

## I.    BACKGROUND

Plaintiff Joe B. Allman was employed by Walmart in Ohio as a long-haul truck driver. (Doc. 11, Am. Compl. ¶ 4). As required by the Department of Transportation, Allman underwent periodic fitness-for-duty examinations conducted by third-party vendors, arranged by Walmart. (*Id.* ¶ 8). At such an examination in August 2013, a physician assistant advised Allman that he suffered from sleep apnea. (*Id.*). As a requirement to obtain a driver medical fitness qualification card ("DOT card"), Allman was subsequently fitted for a continuous positive airway pressure ("C-PAP") machine and was required to undergo a sleep study, which occurred overnight on October

---

[1] Allman also moved for leave to file a surreply, which Walmart opposed. (*See* Docs. 21–22). Allman's Motion is hereby **GRANTED** and the Court will consider the parties' surreply arguments in deciding the Partial Motion to Dismiss.

8, 2013. (*Id.* ¶¶ 8–9). The sleep study, conducted by a Walmart vendor, determined from the data retrieved from the C-PAP machine that Allman stopped breathing 144 times in 6 hours, confirming the previous sleep apnea diagnosis. (*Id.* ¶ 10). Allman disputed the diagnosis but "was ignored." (*Id.*).

After receiving the sleep study results, Walmart required Allman to wear the C-PAP machine 5 nights a week for four hours a night as a condition of his continued employment. (*Id.* ¶ 11). Allman found using the C-PAP machine painful, and it caused him "to suffer nausea, headaches, bleeding mouth and throat, dehydration, and chronic cough and robbed him of sleep." (*Id.* ¶ 12). Allman made several statements to Walmart or its medical vendors that "he was in pain and could not use the C-PAP machine"; "the said C-PAP machine was causing an injury to him"; the C-PAP machine "was making him ill"; that Walmart "had no medical data to back up their demand" that he wear the C-PAP machine; that he refused to continue wearing the C-PAP device "standing on his medical record and the fear of pain and suffering;" that "he was being discriminated against based upon what amounts to a company manufactured perceived disability"; and that he was being "retaliated against for protecting himself from unfair, unjustified fitness for duty examinations, i.e. sleep study examinations, meant to find false grounds to terminate his employment." (*Id.* ¶¶ 12–13, 17, 23, 25–26).

Walmart suspended Allman from driving on a number of occasions when he refused to wear the C-PAP machine as directed. (*Id.* ¶¶ 14, 18, 23). Several additional sleep studies were conducted, arranged respectively by Walmart and Allman, with competing results: Walmart's studies continued to find a need for Allman to wear the C-PAP machine, while Allman's found he did not have sleep apnea and did not require the use of a C-PAP machine. (*Id.* ¶¶ 16, 19, 24). Relying on the sleep studies it arranged, Walmart refused to return Allman to driving shifts. (*Id.*

¶ 25). Unwilling to wear the C-PAP machine as instructed by Walmart, Allman resigned in April 2014. (*Id.* ¶¶ 6, 25). Allman alleges his resignation was in fact a constructive discharge by Walmart. (*Id.* ¶ 6).

Allman commenced this action against Walmart on April 21, 2018 with subject-matter jurisdiction based on diversity of citizenship. (Doc. 1, Compl.). In his Amended Complaint, Allman asserts claims for (1) discrimination based on perceived or claimed disability in violation of Ohio Revised Code §§ 4112.02(A) and 4112.99; (2) retaliation in violation of Ohio Revised Code § 4112.02(I); and (3) wrongful discharge in violation of Ohio's public policy requiring employers to provide a safe workplace for their employees. (*Id.* ¶¶ 32–34). Walmart's Partial Motion to Dismiss is directed only to Count 3 for wrongful discharge in violation of public policy. (Doc. 13, Mot. at 1).

## II. STANDARD OF REVIEW

Walmart brings this motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, alleging that Plaintiffs have failed to state a claim upon which relief can be granted.

Under the Federal Rules, any pleading that states a claim for relief must contain a "short and plain statement of the claim" showing that the pleader is entitled to such relief. Fed. R. Civ. P. 8(a)(2). To meet this standard, a party must allege sufficient facts to state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). A claim will be considered "plausible on its face" when a plaintiff sets forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Rule 12(b)(6) allows parties to challenge the sufficiency of a complaint under the foregoing standards. In considering whether a complaint fails to state a claim upon which relief can be granted, the Court must "construe the complaint in the light most favorable to the plaintiff, accept

3

its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Ohio Police & Fire Pension Fund v. Standard & Poor's Fin. Servs. LLC*, 700 F.3d 829, 835 (6th Cir. 2012) (quoting *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)). However, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 663. Thus, while a court is to afford plaintiff every inference, the pleading must still contain facts sufficient to "provide a plausible basis for the claims in the complaint"; a recitation of facts intimating the "mere possibility of misconduct" will not suffice. *Flex Homes, Inc. v. Ritz-Craft Corp of Mich., Inc.*, 491 F. App'x 628, 632 (6th Cir. 2012); *Iqbal*, 556 U.S. at 679.

### III. DISCUSSION

**A. Elements of a claim for wrongful discharge in violation of public policy**

"Ohio has traditionally adhered to the employment-at-will doctrine, which permits an employer to terminate an at-will employment relationship 'for any cause, at any time whatsoever, even if done in gross or reckless disregard of [an] employee's rights.'" *Plona v. United Parcel Serv., Inc.*, 558 F.3d 478, 481 (6th Cir. 2009) (quoting *Painter v. Graley*, 70 Ohio St.3d 377, 639 N.E.2d 51, 55 (1994) (citations and internal quotation marks omitted)). However, an exception to Ohio's employment-at-will doctrine is available to employees when they have been discharged in violation of public policy. *Greeley v. Miami Valley Maintenance Contrs., Inc.*, 49 Ohio St.3d 228, 551 N.E.2d 981 (1990). To prevail on a *Greeley* claim, an employee must establish four elements:

(1) That a clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the *clarity* element);

(2) That dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the *jeopardy* element);

(3) The plaintiff's dismissal was motivated by conduct related to the public policy (the *causation* element); and

4

(4) The employer lacked overriding legitimate business justification for the dismissal (the *overriding justification* element).

*Collins v. Rizkana,* 73 Ohio St.3d 65, 652 N.E.2d 653, 657–58 (1995); *Wiles v. Medina Auto Parts*, 96 Ohio St.3d 240, 773 N.E.2d 526, 529–30 (2002). Here, Walmart challenges only the jeopardy element, which is a question of law to be determined by the Court. *Collins*, 652 N.E.2d at 658.

Walmart contends that Allman has not sufficiently pleaded the jeopardy element because he has not alleged that Allman ever "made it clear to his employer that he is invoking a governmental policy as the basis of his complaint, not just his own self-interest." (Doc. 13, Mot. at 5, quoting *Beckloff v. Amcro Rigid Plastics USA, LLC*, 93 N.E.3d 329, 340-341 (Ohio Ct. App. 6th Dist. 2017) and *Jermer v. Siemens Energy & Automation, Inc.*, 395 F.3d 655, 659 (6th Cir. 2005)). Allman argues that this government policy notice requirement, first articulated by the Sixth Circuit Court of Appeals in *Jermer*, has never been adopted by the Ohio Supreme Court and is inapplicable to his claim. (Doc. 19, Resp. at 2).

**B.**    *Jermer*'s **government policy notice requirement**

In diversity cases involving state law claims, the court "must apply the law of the state's highest court." *Allied Indus. Scrap, Inc. v. OmniSource Corp.*, 776 F.3d 452, 453 (6th Cir. 2015). "If the state supreme court has not yet addressed the issue presented, [a court] must predict how the court would rule by looking to all available data . . . . 'Relevant data include decisions of the state appellate courts, and those decisions should not be disregarded unless [a court is] presented with persuasive data that the [state] Supreme Court would decide otherwise." *Allstate Ins. Co. v. Thrifty Rent-A-Car Systems, Inc.*, 249 F.3d 450, 454 (6th Cir. 2011) (quoting *Kingsley Assoc. v. Moll PlastiCrafters, Inc.,* 65 F.3d 498, 507 (6th Cir. 1995)).

The Sixth Circuit made this type of prediction in deciding *Jermer*, holding that to satisfy the jeopardy element of wrongful discharge in violation of public policy under Ohio law, "[i]t must

be sufficiently clear from the employee's statements that he is invoking governmental policy [and] that a reasonable employer would understand that the employee relies on the policy as the basis for his complaint," and is "not [relying on] just his own self-interest." 395 F. 3d at 656, 659. In other words, the employer must be "effectively put on notice that the employee is acting not only for himself, but also for the public at large." *Id.* at 659. The Sixth Circuit reasoned that a claim for wrongful discharge in violation of public policy was a special protection from the employment-at-will doctrine, and, in exchange for this protection, "employers must receive notice that they are no longer dealing solely with an at-will employee, but with someone who is vindicating a governmental policy." *Id.*

In *Jermer*, the plaintiff complained about the air quality of his work environment and was subsequently laid off as part of a reduction in force. *Id.* at 656–58. Jermer stated prior to his termination that "I still think there's issues" in reference to the company's HVAC system (which had previously been inspected and found to be working properly) and also requested an air filter for his own office to address his co-worker's cough and his own sinus irritation. *Id.* at 659–60. The Sixth Circuit determined that Jermer's claim for wrongful discharge in violation of public policy did not satisfy the jeopardy element because these statements did not "in any way indicate that he was invoking a governmental policy in favor of workplace safety." *Id.* at 659.

The Sixth Circuit recently applied *Jermer*'s holding in *O'Connor v. Nationwide Children's Hosp.*, 723 F. App'x 321 (6th Cir. 2018). The *O'Connor* court reached the same result, finding that the plaintiff's complaints that a faulty "elevator caused her injury and was unsafe" was insufficient to give her employer "'clear notice' of her intent to vindicate a governmental policy favoring workplace safety vis-à-vis her workers' compensation claim" as required to satisfy the jeopardy element. *Id.* at 323. Moreover, the *O'Connor* court noted that, although the Ohio

6

Supreme Court has not yet addressed the notice requirement articulated in *Jermer*, three Ohio appellate courts have cited it favorably. *Id.* (citing *Beckloff v. Amcor Rigid Plastics USA, LLC*, 93 N.E.3d 329, 340 (Ohio Ct. App. 2017); *Gaskins v. Mentor Network-REM*, No. 94092, 2010 WL 3814560, at *4 (Ohio Ct. App. Sept. 30, 2010); *cf. Zwiebel v. Plastipak Packaging, Inc.*, No. 17-12-20, 2013 WL 4768768, at *8 (Ohio Ct. App. Sept. 3, 2013) (citing *Jermer* for the proposition that a *Greeley* claim's fundamental purpose "is to protect employees who seek to vindicate an important governmental policy; the claim does not exist to vindicate an employee's personal interest")).

Allman argues that *Jermer* has been implicitly rejected by the Ohio Supreme Court in *Sutton v. Tomco Machining, Inc.*, which held that an employee satisfied the jeopardy element by notifying his employer about an injury one hour before the employer fired him. 129 Ohio St.3d 153, 950 N.E.2d 938, 946–47 (2011). However, the *O'Connor* court expressly considered and rejected this argument, limiting *Sutton* to similar contexts involving an available, but not filed, worker's compensation claim. 723 F. App'x at 324. *Sutton* is thus inapplicable here.

The Sixth Circuit is "bound by [a prior published case that interpreted Ohio law] unless Ohio law has measurably changed in the meantime." *Rutherford v. Columbia Gas*, 575 F.3d 616, 619 (6th Cir. 2009) (alteration in original) (quoting *Big Lots Stores, Inc. v. Luv N' Care, Ltd.*, 302 F. App'x 423, 427 (6th Cir. 2008)). So too is this Court bound by a published decision of the Sixth Circuit interpreting Ohio law. As no Ohio court has suggested that *Jermer* misapplied Ohio law or reached a contrary holding, *Jermer*'s holding controls this case.[2,3]

---

[2] One Ohio appellate court "disagree[d] with *Jermer*'s implication that an employee must make some formal announcement that his statements are being made for the purpose of protecting the public policy favoring workplace-safety." *Dohme v. Eurand Am., Inc.*, 170 Ohio App. 3d 593, 601 (Ohio Ct. App. 2007). However, that decision was vacated by the Ohio Supreme Court on other grounds, and the Ohio Supreme Court expressly declined to consider the jeopardy element. *Dohme v. Eurand Am. Inc.*, 130 Ohio St. 3d 168, 174 (2011).

[3] Allman also argues that *Jermer* is of limited relevance because it was decided on summary judgment and not in the posture of a motion to dismiss. However, "[t]hat *Jermer* considered an appeal from a summary judgment grant

C.  *Jermer* applied to the present case

Turning to the facts at issue, Allman alleges that his discharge violated Ohio's public policy in favor of workplace safety. (Doc. 11, Am. Compl. ¶¶ 34, relying on Ohio Rev. Code §§ 4101.11 and 4101.12 (requiring employers to furnish a safe place of employment)). The Ohio Supreme Court has held that a wrongful discharge claim may properly rest on this policy, and Walmart does not challenge the clarity element of Allman's claim. *Pytlinski v. Brocar Prod., Inc.*, 94 Ohio St. 3d 77, 80, 760 N.E.2d 385, 388 (2002). However, Allman's statements to Walmart and its vendors were insufficient to put Walmart on notice that he was relying on Ohio's statutory policies in favor of workplace safety in refusing to use the C-PAP machine, and not simply acting in his own self-interest. Allman's complaints undoubtedly put Walmart on notice that Allman found the C-PAP machine painful and detrimental to his health, but none of his complaints as alleged raise the specter of workplace safety, let alone a governmental policy in favor of workplace safety that Allman believed had been violated. In accordance with *Jermer*'s binding precedent, this Court must conclude that Allman has failed to satisfy the jeopardy element, and thus has failed to state a claim for wrongful discharge in violation of public policy.[4]

IV. CONCLUSION

For the foregoing reasons, Walmart's Partial Motion to Dismiss is **GRANTED**. Count 3 of Allman's Amended Complaint is **DISMISSED**. Further, Allman's Motion for leave to file a surreply is **GRANTED**.

---

rather than a Rule 12(b)(6) dismissal offers no legitimate basis to mitigate its precedential value here, particularly because the jeopardy element presents a question of law." *O'Connor*, 723 F. App'x at 323.

[4] Allman further asserts that Walmart forfeited its arguments regarding the jeopardy element when it failed to raise them in a previous motion to dismiss the original Complaint. However, Allman cites no authority for this assertion. Fed. R. Civ. P. 12(h) provides that a party may waive certain defenses by failing to include them in a previous Rule 12 motion, but a defense based on Rule 12(b)(6) is not among them. Moreover, failure to state a claim may be raised at any point in the case so long as it is "early enough not to delay trial." Fed. R. Civ. P. 12(c). Accordingly, the Court finds that Walmart did not forfeit its arguments regarding the jeopardy element.

The Clerk shall remove Documents 13 and 21 from the Court's pending motions list.

**IT IS SO ORDERED.**

  */s/ George C. Smith*
**GEORGE C. SMITH, JUDGE**
**UNITED STATES DISTRICT COURT**